```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____
JULIA GONZALEZ,

                     Plaintiff,             06-CV-6036

            v.                               **DECISION**
                                                      **and ORDER**
JO ANNE B. BARNHART, Commissioner
of Social Security

                   Defendant.
_____

## INTRODUCTION

Plaintiff Julia Gonzalez ("Gonzalez") brings this action pursuant to Titles II and XVI of the Social Security Act, § 201 et. seq. (codified at 42 U.S.C. § 401 et. seq. and 42 U.S.C. § 1381 et. seq.)(the "Act") claiming that the Commissioner of Social Security improperly denied her application for disability benefits and supplemental security income payments. Specifically, Gonzalez alleges that the decision of the Administrative Law Judge ("ALJ") denying her application for benefits was erroneous because it was not supported by substantial evidence in the record.

The Commissioner moves for judgment on the pleadings on grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law. Gonzalez also moves for judgment on the pleadings and seeks reversal of the decision or, in the alternative, remand to the Commissioner for further proceedings.

## BACKGROUND

On April 23, 2003, plaintiff Julia Gonzalez, at the time a 36 year old former assembly line worker, applied for Disability Insurance Benefits and Supplemental Security Income payments, claiming that she had become unable to work because of her HIV+/AIDS status and its manifestations including herpes simplex virus ("HSV") outbreaks, leg pain and back pain. Gonzalez's

applications were denied initially and on reconsideration. Thereafter, Gonzalez requested a hearing before an ALJ, which took place on August 4, 2005. Plaintiff and her representative appeared before the ALJ and presented testimony. In a decision dated August 22, 2005, the ALJ found that although Gonzalez's HIV+/AIDS status and HSV, and leg pain were severe, she retained the residual functional capacity ("RFC") to perform "sedentary" work, and therefore was not disabled within the meaning of the Act and thus not entitled to receive Social Security benefits. Gonzalez's appeal of the ALJ's decision to the Social Security Appeals Board was denied on December 7, 2005, and thereafter plaintiff filed this action.

## DISCUSSION

### I.   Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Monqeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). Defendant asserts that her decision

was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules. Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the pleadings, the Court is convinced that "plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," judgment on pleadings may be appropriate. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II. Plaintiff's Medical History

On September 11, 2002, Gonzalez was seen by Dr. Amneris Luque, an infectious disease specialist at the Strong AIDS Center.[1] (R. 232). At the time of her visit with Dr. Luque, Gonzalez complained of continued breakouts of HSV once a month and that she continued to have episodic pain in her legs that she attributed to her HSV breakouts. However, she was clinically stable without any signs of major opportunistic infections. She also had relatively good adherence to her antiretroviral medication.[2] Gonzalez was again seen at the AIDS center because she complained of red burning lesions on her tongue. Her HSV was in remission and the doctor prescribed ferrous sulfate for her anemia. At that time, the doctor described her condition as asymptomatic.[3] Gonzalez saw Dr. Luque again on January 9, 2003 with complaints of episodes of dizziness and slight nausea. Plaintiff stopped taking her medications for three months and during this time her leg pain completely disappeared.

---

[1] Treatments notes contained in the record reference to earlier laboratory results, which show that in April 1995, Gonzalez's CD4 count was 196 indicating that she was suffering from AIDS. A CD4 count is a measurement of immune system function. AIDS is diagnosed when an HIV infected person has a CD4 count below 200.

[2] Antiretroviral medications are medications used for the treatment of HIV infections.

[3] Asymptomatic HIV infection is a phase of varying length during chronic infection with HIV, in which there is a slow deterioration of the immune system without clinical symptoms associated with HIV. See www.nlm.nih.gov/medlineplus/ency/article/000682.htm

However, she resumed taking all her medication after being told that her viral load had increased to 10,000.[4] On February 13, 2003 plaintiff went to Strong Memorial Hospital due to nausea, vomiting and renal colic. Tests revealed the development of a left adexnal cyst and gallstones.

Plaintiff saw Dr. Luque for a follow up visit on April 17, 2003. She started working again but had difficulty due to excruciating pain in her lower extremities. She described the pain as throbbing and constant. Plaintiff also had continued decreased fat in her limbs.[5] Dr. Luque opined that the symptoms pointed to myopathy and ordered a CK test, noting that if the CK was elevated the antiretroviral medications would be suspended.[6] Plaintiff's test results showed an elevated CK level and as a result, her antiretroviral medications were subsequently stopped in April 2003. Gonzalez also had an EMG done on May 14, 2003 to assess the myopathy. However, the EMG was normal. Treatment notes from Dr. Luque show that Gonzalez continued to have intermittent leg pain and she described it as deep seated pain that bothered her day and night and was particularly associated with high activity. Moreover, her symptoms did not improve even though she was not taking her antiretroviral medications. Meanwhile, her viral load soared to 47,387 in June 2003. R. 234 Accordingly, plaintiff started her antiretroviral medications. Dr. Luque noted that plaintiff was on a "rescue regimen" of antiretrovirals[7] (R. 169-170) and in August 2003, Gonzalez's viral load had decreased to 1,273. R. 234

---

[4]Viral load testing measures amount of HIV found in blood. See cdc.gov/hiv/pubs/brochure/ livingwithhiv.

[5]A physical examination revealed that plaintiff's legs were thin due to loss of subcutaneous fat. Gonzalez was able to work for only one month in 2003.

[6]A CK test is a blood test that measures creatine phosphokinase ("CPK"), an enzyme found predominantly in the heart, brain and skeletal muscle. When the CPK is substantially elevated, it usually indicates injury or stress to one or more of these areas. The test is used to determine the extent of muscle damage caused by drugs, trauma or immobility. Certain medication can cause CPK levels to rise. See nlm.nih.gov/medlineplus/ency/article/003503

[7]"Rescue regimen" is an HIV treatment designed for patients who have used many different anti-HIV drugs in the past, have failed to respond to at least two regimens, and have extensive drug resistance. See aidsinfo.nih.gov/

Dr. Ramon Medalle consultatively examined plaintiff in August 2003, and based on his examination found plaintiff to be mildly limited in activities requiring sustained moderate to heavy physical exertion because of HIV infection and AIDS complicated by myopathy. R. 201 Plaintiff reported to Dr Medalle pain in both lower extremities, especially the thighs, with pain worse on the left. R. 198-201

Plaintiff continued to have bilateral leg pain all throughout 2004 and 2005 and indeed underwent physical therapy from May 17, 2004 through July 23, 2004. R. 214-221 Dr. Luque's requisition for physical therapy states that plaintiff's leg pain was likely related to medication and plaintiff's decreased endurance. Id. In a December 2004 visit with Dr. Luque, Gonzalez reported increased recurrences of HSV with worsening leg pain prior to the outbreaks. Plaintiff also reported an episode of amenorrhea (absence of menstrual period) followed by vaginal bleeding lasting three weeks after changes were made to her medication. In a follow up visit on March 7, 2005, Gonzalez reported feeling well but still had leg pain almost daily that appeared to coincide with breakouts of HSV.

On July 25, 2005, Dr. Luque completed a medical questionnaire in which the doctor listed the following treating diagnoses: HIV/AIDS, uterine prolapse, myopathy of unclear origin, disc herniation L3-L4, disc bulging L4-L5 and gallstones. The doctor also indicated that Gonzalez was limited by fatigue and weakness to standing for an hour in an eight hour workday and walking one hour in an eight hour workday. She further stated that plaintiff is limited to lifting five pounds and carrying two pounds for a distance of 100 yards. R.226-228 In fact, a clinical note attached to the report reveals Gonzalez's continuing complaints of lower extremity pain aggravated by physical activity and requiring long periods of rest after household chores. Further, an employability assessment report prepared by Dr. Luque dated July 21, 2005 is

consistent with the July 25 report. In it, Dr. Luque reports that Gonzalez cannot stand for more than thirty minutes and is greatly limited in pushing, carrying, lifting and climbing. R.239-239A.

Notably, after the ALJ issued his decision, additional records that were not previously available were sent to the Appeals Council. See Perez v. Chater, 77 F.3d 41 (2d Cir. 1996) (finding evidence first submitted to the Appeals Council becomes part of the administrative record). On September 7, 2005, Dr. Luque completed a medical source statement of ability to do work related activities. The report indicates that plaintiff was limited to lifting less than ten pounds frequently, standing and walking less than two hours in an eight hour day, sitting less than six hours in an eight hour work day and was also limited in pushing and pulling in both the upper and lower extremities. Dr. Luque specifically stated that the plaintiff's recurrent HSV infection resulted in pain and difficulty sitting for long periods. R. 247-252

### III. **Plaintiff's Non-Medical Evidence**

Plaintiff testified that the most significant symptom she suffered from due to her HIV status was pain in her legs, which was present all day long. In addition, since 1993 she has had flare ups of HSV every month lasting two weeks, improving with medication, but never having been controlled. R. 277 Gonzalez described a burning sensation and pain in her legs preceding any HSV breakout. She testified that she suffered from diarrhea once or twice a week, depending on her food intake. Plaintiff also stated she suffered from tiredness or sleepiness because of her HIV status and medications. R. 282 Moreover, she indicated having night sweats and nausea and that she needed to take daily naps. R. 289 Further, she testified that she could only sit for half an hour and stand for only ten or fifteen minutes due to back pain. R. 284 In addition, she indicated she required help with grocery shopping and needed two days to complete the task because she needs to rest the day after shopping. Moreover,

she described the necessity to rest between household chores and to break down house work in stages. For example, she could sweep one day but had to wait until the next day to mop. R. 285[8]

## IV. The Commissioner's decision to deny Plaintiff benefits was erroneous based on substantial evidence in the record.

The ALJ made his determination based on the evidence before him and concluded that plaintiff did not suffer from a disability under the Act. Specifically, the ALJ found that plaintiff's asymptomatic HIV positive condition with lower leg pain and back condition is severe, but that these impairments do not meet or medically equal one of the listed impairments under Appendix 1, Subpart P, Regulation No. 4. R. 26 The ALJ took into account plaintiff's subjective complaints of pain, and found that plaintiff's complaints were not credible and that although she could not perform her previous work as an assembly line worker, she has the RFC to perform the full range of sedentary work, as defined by 20 C.F.R. 404.1567. Id. at 27.[9] However, the ALJ failed to properly consider plaintiff's impairment under the proper listings.

The listings for HIV infection is found in section 14.08 of the Act, which requires that plaintiff have an HIV infection with one of the following: a bacterial infection, a fungal infection, a protozoan or helminthic infection, or a viral infection. See 20 C.F.R., Part 404, Subpt. P., App. 1, § 14.08. Defendant argues that plaintiff did not meet or equal the listing under § 14.08 because, while plaintiff has an HIV infection, she has failed to show any medical evidence of any of the listed infections nor did she allege that she

---

[8] Dr. Medalle noted in his report that plaintiff engaged in a full range of daily activities such as cooking meals, cleaning, doing the laundry, shopping for food and clothing, caring for her personal need, socializing, going to the movies, listening to the radio and watching television. (R. 199)

[9] The ALJ found that Gonzalez has the capacity to lift and carry 10 pounds occasionally; sit without restriction 8 hours in an 8 hour workday; and stand and/or walk on an occasional basis and up to 2 hours in an 8 hour workday. (R. 26).

had any of the infections. Plaintiff disagrees and contends that the most relevant additional conditions pertinent to plaintiff are found in subsections 14.08D2a and 14.08N.

Listing 14.08D2a requires proof of HIV infection as well as HSV causing mucocutaenous infection such as oral, genital or perianal lasting one month or longer. See 20 C.F.R., Part 404, Subpt. P., App. 1, § 14.08.D2a. Here, plaintiff is HIV positive and has presented with manifestations of recurrent HSV. The record is replete with mention of plaintiff's HSV infection dating back to September 2002. Almost all of the progress notes from plaintiff's treating physicians indicates recurrent HSV as a significant ongoing concern. Indeed, Gonzalez testified that she had HSV flare ups monthly since 1993. She indicated that although medication helped her HSV, it had never been completely controlled. (R.277) In addition, Gonzalez told Dr. Medalle that she had recurrent genital herpes infection for the past thirteen years. (R. 198) Further, plaintiff's June 1, 2005 treatment record indicates she was experiencing leg pain associated with her outbreaks of HSV and that she was on a prophylactic dose of an anti-viral medication active against herpes viruses. (R. 258) On September 5, 2005, Dr. Luque opined that plaintiff's recurrent episodes of HSV and the accompanying pain limited her ability to sit for long periods of time. (R. 252). Thus, plaintiff meets listing 14.08D2a since she is HIV positive and has recurrent genital HSV which has been documented for years.

Further, the ALJ failed to evaluate plaintiff under listing 14.08N,[10] even though the medical records and subjective evidence show that such an evaluation would have resulted in a finding of disability. Important factors to be

---

[10] 14.08N requires proof of HIV infection and repeated manifestations of HIV infection resulting in significant, documented symptoms such as fatigue, fever, weight loss, night sweats and one of the following at a marked level: restrictions of daily activities, difficulties in maintaining social functioning, or difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace. See 20 C.F.R., Part 404, Subpt. P., App. 1, § 14.08N. For HIV infected individuals evaluated under 14.08N, listing level severity is to be evaluated in terms of the functional limitations imposed by the impairment.

considered in assessing the functioning of individuals with HIV infection include, but are not limited to: symptoms of fatigue and pain, characteristics of the illness such as frequency and duration of manifestations or periods of exacerbation and remission in the disease course; and the functional impact of treatment of the disease, including the side effects of medication. See 20 C.F.R. § 404 Pt. 404, Subpt. P, App. 1, 14.00 D8. Here, the medical evidence demonstrates that Gonzalez had recurrent HSV infections and chronic leg pain. Moreover, on August 6, 2003 plaintiff also complained of night sweats. R. 169 She also complained of sleepiness as a side effect of her medication thereby causing her to be unable to work at a job she had obtained after filing for benefits. R. 270 Doctor's notes also repeatedly mention the fat redistribution in her leg and the fact that plaintiff had an elevated CK level as a side effect of medication, which necessitated interruption of her antiretroviral medications.

The ALJ also dismissed plaintiff's leg pain by characterizing it as related to the use of medication and not her HIV+/AIDS status. R. 23 This is erroneous since even if plaintiff's leg pain was a side effect of the medication, listing 14.08N clearly requires that the side effects of medication be considered. See 20 C.F.R. § 404 Pt. 404, Subpt. P, App. 1, 14.00 D8. In addition, the ALJ stated that plaintiff's leg pain was controllable by a change in her medication. However, the record shows that Gonzalez is on a "rescue regimen" of HIV medication, which indicates that her choices for medication to treat her HIV infection are limited. Accordingly, although a change in medication may alleviate plaintiff's chronic leg pain, she may not have the luxury of altering her HIV medication regimen. Further, in speculating on the effect a medication could have on Gonzalez's condition, the ALJ improperly disregarded the opinion of plaintiff's treating physician, Dr. Luque, who opined that plaintiff's leg pain was disabling and possibly related to

medication. It also ignores Dr. Luque's theory that plaintiff's leg pain is related to her HSV outbreaks. R. 258. Such speculative medical judgment is beyond the province of an ALJ. See Balsam v. Chater, 142 F.3d 75, 81 (2d Cir. 1998).

Listing 14.08N also requires a marked level of limitation in restrictions of activities of daily living, difficulties in maintaining social functioning or difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace. In this case, plaintiff indicated she needed assistance with shopping and that it took her two days to complete this task because of fatigue. She also stated that it was necessary for her to take daily naps because she was drained and exhausted by the early afternoon. Plaintiff also required rest between simple household chores and broke down house work over two days because of fatigue. Dr. Luque's assessment of plaintiff's RFC supports plaintiff's testimony and thus supports a finding of marked restrictions of plaintiff's daily living activities.

The ALJ's failure to assess the plaintiff under 14.08N, his failure to properly consider the side effects of medication and his failure to appropriately consider Gonzalez's HSV infection was erroneous. Further, evidence submitted to the Appeals Council strengthens the position that Gonzalez meets listing 14.08N. The September 7, 2005 report of Dr. Luque details plaintiff's persistent and frequent pain in her thighs and specifically mentions her recurrent HSV infection resulting in pain and difficulty sitting. Therefore, the record clearly demonstrates that plaintiff's condition meets listing 14.08N.

**V.   The ALJ failed to credit the conclusions of plaintiff's treating physician in regard to her ability to work**.

The medical record submitted by plaintiff's treating physician contains considerable evidence indicating that plaintiff is unable to work. The ALJ,

however, committed error by disregarding Dr. Luque's evaluation of plaintiff's RFC and instead relied on the one time consultative examiner's opinion of Dr. Medalle. Pursuant to the Social Security Regulations:

> Unless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining source who do not work for us.

20 C.F.R. 404.1527(f)(2)(ii). The ALJ is required to give the opinions of the claimant's treating physicians controlling weight if the opinions are well-supported by the medical evidence in the record as a whole and are not inconsistent with substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Furthermore, the ALJ must give good reasons in his decision as to the weight afforded the treating physicians' opinions. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).

The medical opinion of a treating physician is afforded controlling weight if that opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 1116.927(d)(2); Schall v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998). The opinion of plaintiff's treating physician, Dr. Luque is well supported and is based on continuous treatment over a period of time and is therefore entitled to controlling weight. Dr. Luque gave various opinions concerning plaintiff's RFC that were available to the ALJ at the hearing. In a July 25, 2005 report the doctor reported that plaintiff was limited by fatigue and weakness to one hour standing, walking, lifting five pounds and carrying two pounds. R. 277 Dr. Luque also stated plaintiff was moderately limited in sitting. R. 239 The ALJ disregarded Dr. Luque's assessment of plaintiff's RFC as "inconsistent with the evidence of record" (R. 31) and relied almost exclusively on Dr. Medalle's opinion stating that "more importantly, an impartial consultative examiner, Dr. Ramon Medalle, determined

that the plaintiff is only mildly limited in activities requiring sustained moderate to heavy physical exertion because of her HIV infection and AIDS complicated by myopathy." R. 24; See Iannopollo v. Barnhart, 280 F.Supp.2d 41 (W.D.N.Y. 2003) (finding legal error when ALJ treats opinions of examining physicians on par with treating physician's opinions).

Here, Dr. Luque's opinions are well supported and the record reveals that plaintiff has recurrent HSV infections causing leg pain. Moreover, plaintiff is on a regimen of antiretroviral medications that may cause leg pain as a side effect. In addition, the September 5, 2005 report contains Dr. Luque's opinion that plaintiff was limited to lifting less than ten pounds, standing and/or walking less than two hours in an eight hour work day and sitting less than six hours in an eight hour work day. Particularly, Dr. Luque indicated that persistent pain on plaintiff's thighs prevented her from pushing and pulling. Moreover, the doctor explicitly noted that plaintiff's recurrent HSV caused pain and difficulty in sitting for long periods.[11] Because Dr. Luque's reports show plaintiff's marked limitations, Dr. Luque's assessments establish a RFC that is less than sedentary.[12] Therefore, plaintiff is disabled.

**VI.   The ALJ Erred in Applying the Grid Rule To Plaintiff**

Grid rules assume that a plaintiff has the capacity to perform a full range of sedentary work. See Decker v. Harris, 647 F.2d 291, 296 (2d Cir. 1981) (where claimant's medical-vocational profile correlates with that of a specific

---

[11] When the treating physician's opinion is not given controlling weight, the ALJ must consider various "factors" to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2). These factors include: (I) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the SSA's attention that tend to support or contradict the opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). Here, the ALJ declined to apply any of the above required factors when a treating physician's opinion is not given controlling weight.

[12] Sedentary work is defined by Social Security as work involving lifting and carrying no more than ten pounds and occasionally lifting and carrying articles like docket files, ledgers and small tools. A sedentary job is defined as one that involves sitting, however, walking and standing are required occasionally. See 20 C.F.R. 404.1576(a) and 416.967(a).

grid rule, the rule will dictate whether claimant can be considered disabled). Where plaintiff cannot perform a full range of sedentary work, she must be evaluated on an individual basis rather than by a mechanical application of the grid rules. See Nelson v. Bowen, 882 F.2d 45, 46 (2d Cir. 1989). Here, the ALJ erred when applying Grid rule 201.23 to find that plaintiff was not disabled because clearly plaintiff cannot perform a full range of sedentary work based on evidence in the record.

Dr. Luque's opinions clearly demonstrate that plaintiff cannot perform sedentary work. The record reveals that Dr. Luque reported on a number of occasions that plaintiff could not lift the required weight to perform sedentary work, that plaintiff could not stand and/or walk or sit for time periods sufficient to total an eight hour day. Further, in applying the Grid rules, the ALJ ignored evidence of plaintiff's non-exertional impairments. While Dr. Luque stated that some of Gonzalez's limitations were due to fatigue and weakness, the doctor also stated that persistent lower extremity pain caused functional limitations. R. 226-228 Almost all treatment notes in the record log reveal disabling leg pain complaints. Indeed, plaintiff testified to pain stating it was her most significant problem. R. 276. Because the Grid rules do not apply in this situation, the ALJ improperly relied on the grids to support his finding that the plaintiff was not disabled. This record amply supports a finding that there is substantial evidence of plaintiff's disability over an extended period of time as supported by her treating physician and therefore the ALJ's decision is reversed.

## **CONCLUSION**

For the reasons set forth above, I grant plaintiff's motion for judgment on the pleadings and reverse the Commissioner's determination. I remand this

case to the Commissioner solely for the calculation and payment of benefits. Defendant's motion for judgment on the pleadings is denied.

ALL OF THE ABOVE IS SO ORDERED.

                                        s/Michael A. Telesca
                                          MICHAEL A. TELESCA
                                          United States District Judge

Dated:     Rochester, New York
            March 29, 2007